IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 16-cv-02266-RPM

GABRIEL ALEXANDER ACOSTA,

    Petitioner,

v.

RICK RAEMISCH, Exec Director, Colorado Department of Corrections, and
CYNTHIA COFFMAN, Attorney General for State of Colorado,

    Respondents.

_____

MEMORANDUM OPINION AND ORDER
_____

    An Information filed on April 23, 2004, in the District Court, Adams County, Colorado, charged Gabriel Alexander Acosta and Chante Dillon with first degree murder for the killing of Kimberly Dotson. A lawyer from the Adams County Public Defender's Office appeared for Acosta on April 28, 2014.

    At a motions hearing held on November 12, 2014, defense counsel advised the court of a potential conflict of interest because lawyers in that office had represented two of the state's witnesses, the victim and the only eye-witness Patricia Medina. The court appointed advisory counsel for Acosta to discuss a waiver of those conflicts. At a hearing held on November 23, 2014, that lawyer said he thought the conflicts were not waivable but Acosta wanted to waive and the court accepted his waiver.

    The court ordered separate trials with Dillon's case going first and Acosta's trial immediately after her trial.

Patricia Medina failed to appear in response to subpoenas for two hearings. As a result she was jailed. The court then ordered the taking of her deposition to preserve her testimony for use at the two trials if she did not appear for them. The deposition for Dillon was taken on December 15, 2004, with cross-examination by her appointed counsel. Acosta's public defender cross-examined Medina on December 22, 2014. At the conclusion of that deposition an attorney for Medina requested her release which the court granted, requiring that she post a $2,500 personal recognizance bond and report to supervised release.

Upon her failure to report as ordered, an arrest warrant was issued on January 20, 2005, and Medina was returned to jail. She testified at Dillon's trial in March, 2015. Dillon was convicted of manslaughter.

At a hearing on Thursday, March 31, 2015, four days before the scheduled start of Acosta's trial on Monday, April 4, 2015, the public defender advised the court that a non-waivable conflict had been discovered requiring his withdrawal.

The court accepted counsel's statement that he could not ethically disclose the conflict and granted his withdrawal. The court then engaged in a colloquy with Acosta informing him that he had the choice of proceeding *pro se* or waiving his right to speedy trial to permit new appointed counsel to prepare for trial which could not be done before the trial to begin four days later. Given that choice, Acosta waived speedy trial and the trial was rescheduled to begin on August 29, 2005.

On April 6, 2015, counsel for Medina asked the court to release her because of the delay in the trial setting. The court granted that request, released her on a $500 personal recognizance bond and an order to report to supervised release the following

morning. She did not report as ordered. Acosta was not present and no lawyer represented him at that hearing. New counsel for Acosta entered their appearance on April 8, 2015.

An arrest warrant for Medina was issued on July 1, 2015. Medina was not located and at Acosta's trial her testimony was read to the jury from the deposition. It had been videotaped but defense counsel requested the reading to enable him to submit cross-examination from other transcripts.

Medina was arrested in Denver on unrelated charges on September 1, 2015, the same day that the transcripts were read. The Denver Sheriff advised the Adams County Sheriff of this arrest by faxes sent on September 2 and September 6, 2015.

In his Application for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254, Acosta claims that he was denied two of the protections afforded by the Sixth Amendment to the United States Constitution–the right to be confronted with the witness against him and to have the assistance of counsel for his defense.

The first claim is that if he had been represented by a lawyer at the March 31, 2015, hearing on the withdrawal of the public defender he would not have had to waive speedy trial and the trial could have proceeded with a much shorter delay keeping Patricia Medina in jail until she testified at trial. The applicant contends that the trial judge assumed that not enough time remained on the statutory speedy trial limit to give newly appointed defense counsel an adequate opportunity to prepare for trial. That assumption is said to be wrong because more than 50 days remained according to Acosta's computation.

There was no counsel for Acosta present to object to the court's release of the witness on April 6, 2015. The transcript of that hearing shows that the judge considered it unfair to keep her in jail for another five months. If defense counsel could not have persuaded the judge that her availability for trial was critical, at least he would have assured that her release would have been conditioned upon more restrictions on her liberty to enable the prosecution to present her at the trial.

On direct appeal the Colorado Court of Appeals denied the claim of a right to counsel at the March 31, 2015, hearing for the stated reason that the trial court had adequately advised Acosta of his rights at the hearing, in effect performing the duties of a defense lawyer, and ruled that the April 6 release of witness hearing was a ministerial stage of the criminal action not requiring representation of the defendant.

These rulings are subject to deference and can only be a basis for relief if they are contrary to clearly established Federal law as determined by the Supreme Court or resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d)(1) and (2).

It is clearly established law that the accused must be represented by counsel at every critical stage of the proceedings, *Holloway v. Arkansas,* 435 U.S. 475 (1978). The determination of what constitutes a critical stage of criminal proceedings appears to be a mixed question of fact and law. In this case the availability of the only witness who could testify from direct observation about the beating and suffocating of Dotson was Patricia Medina. She had repeatedly failed to appear and keeping her in custody was critical to the opportunity to confront her testimony with a live cross-examination. A short continuance of the trial at the March 31 hearing would have ameliorated the

judge's concern about holding her in jail.  The importance of the right of confrontation of this critical witness weighs heavily in favor of a finding that these were critical stages of this prosecution and warrants a determination that the rulings of the Colorado Court of Appeals were unreasonable determinations of fact and unreasonable applications of the law.

The use of deposition testimony is a denial of the Sixth Amendment right of confrontation unless the witness is unavailable.  The prosecution has the duty to use reasonable efforts to bring the witness to trial.  Here the Colorado Court of Appeals found that condition was satisfied.  That finding cannot be supported by the facts that were presented in the record.  Medina did not report to supervised release on April 7 as required by the court at the April 6 hearing.  No warrant for her arrest was obtained until July. There was no attempt to locate Medina before the warrant was issued.  In *Cook v. McCune,* 323 F.3d 825, 835-36 (10th Cir. 2003) the Tenth Circuit Court of Appeals identified the criteria for measuring good faith, reasonable efforts to produce a witness for trial: (1) the more crucial the witness, the greater the effort required to secure the witness's attendance; (2) the more serious the crime for which defendant is being tried, the greater the effort the prosecution should put forth to produce the witness a trial; (3) where a witness has special reason to favor the prosecution, the defendant's interest in confronting the witness is stronger; and (4) the prosecution must make the same type of effort to locate and secure the witness for trial that it would make if the prior testimony were not available.  The Colorado Court of Appeals accepted these criteria as applicable to this case and summarized the evidence produced at the hearing held by the trial court as follows:

> At an evidentiary hearing, the trial court inquired into the prosecution's efforts to locate and produce P.M. for trial.  Two witnesses testified for the People: A.D., an investigator for the district attorney's office, and M.L., a detective with the Westminster Police Department.  We conclude the testimony of these witnesses supports the trial court's finding that the People made reasonable efforts to secure P.M.'s trial attendance, and that she was unavailable.
>
> A.D. testified that she was assigned to locate and hand serve P.M.  To this end, A.D. went to P.M.'s prior known address, the address listed on a traffic citation P.M. received, and visited the post office nearest P.M.'s last known address to see if P.M. filed a change of address form.  Despite these efforts, A.D. testified that she was unable to locate P.M.
>
> M.L. testified about his knowledge of P.M.'s living situation and his prior conversations with P.M.  Information from various sources indicated that she had no permanent residence and lived "on the streets" in the vicinity of East Colfax Avenue in Denver.  P.M. told M.L. that there was no location where he would be able to contact her, and that the best way to contact her was through her grandfather.  M.L. stated that he had a good rapport with the grandfather, who was "the one person from [P.M.'s] family who had been cooperative with the police.  M.L. stated he had had "at least a half-dozen bi-weekly conversations with the grandfather, seeking to locate P.M., the most recent of which was two days before the hearing.  M.L. had told the grandfather that if P.M. contacted him, he was to call police and try to hold her so that police could pick her up.
>
> M.L. also testified that he enlisted the aid of the Special Crime Attack Team (SCAT) unit of the police to search for P.M.  The SCAT unit looked for her at the same Denver address at which she had earlier been arrested.  They also looked for her on the streets in areas she was known to frequent.  M.L. also made a search for her along Colfax Avenue.

The determination that these efforts were reasonable is an *unreasonable* determination of the facts.  The prosecutor should have requested more restrictions at the release hearing.  The efforts to locate her should have begun immediately after her failure to appear on the following morning.  An arrest warrant should have been obtained long before July 1.  With an outstanding warrant police departments in the

6

Denver metropolitan area would have been looking for her.

Given her record it would have been reasonable to check the jails in the area on the high probability that she would have been picked up for a street crime as, indeed she was by Denver Police on September 1 while the trial was still in progress.

Upon the record presented here, the Applicant has established his asserted violations of the Sixth Amendment. Acosta contends that these are structural errors requiring reversal of his conviction. The Supreme Court said that. *See* citations in *Satterwhite v. Texas,* 486 U.S. 249 at 257 (1987). It has also recognized exceptions to that general rule as it did in that case. Some Sixth Amendment right to counsel violations are amenable to harmless error analysis as the Tenth Circuit held in *U.S. v. Lott,* 433 F.3d 718 (2006).

The difference is determined by asking whether the errors can be said to undermine confidence in the jury's verdict. That is difficult. Medina's credibility is in doubt as shown by the impeaching cross-examination read to the jury and by the fact that she recanted her testimony in a post verdict hearing. There was other testimony at the trial that was supportive of the verdict, including testimony from Favian Avecedo and Ben Martinez that Acosta admitted his guilt.

The Court of Appeals addressed the failure to have an adequate opportunity to effectively cross-examine Patricia Medina under a harmless error analysis and found any error to be harmless beyond a reasonable doubt. While the court did not specifically refer to a Sixth Amendment violation the denial of that opportunity resulted from the violations presented here. The state court reviewed the entire record in its determination that there was adequate evidence to support the conviction even if

Medina's testimny is disregarded.  That is questionable given the details she gave as to how the killing was done and the focus on Acosta as the primary participant.  Under 28 U.S.C. § 2254(e)(1) the determination of a factual issue made by the state court must be presumed to be correct and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence.  The sufficiency of the evidence is a factual question and Acosta has not met that burden.

Accordingly, it is

ORDERED, that the application is denied and the Clerk shall enter judgment dismissing this civil action.

### CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253, the applicant has made a substantial showing of violations of the Sixth Amendment and that reversal is required.  Reasonable jurists could debate this Court's determination to the contrary.  Thus, a certificate of appealability is granted.

DATED:   March 30, 2017

BY THE COURT:

s/Richard P. Matsch

_____
Richard P. Matsch, Senior Judge